1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRENT THOMAS SMITH,                     No.  2:11-cv-3128 AC

12                 Plaintiff,

13          v.                               ORDER

14   CAROLYN W. COLVIN, ACTING
     COMMISSION OF SOCIAL SECURITY,
15
                   Defendant.
16

17

18

19          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

20   ("Commissioner") denying his application for a Period of Disability and Disability Insurance

21   Benefits ("DIB") under Sections 216(i) and 223 of the Social Security Act.  The parties' cross

22   motions for summary judgment are pending.  For the reasons stated below, the court grants in part

23   plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for

24   summary judgment.

25                         RELEVANT PROCEDURAL BACKGROUND

26          Plaintiff applied for DIB on August 6, 2007, alleging disability beginning June 17, 2007.

27   Administrative Record ("AR") 104-13.  Plaintiff's application was initially denied on February

28
                                              1

1    19, 2008 and upon reconsideration on May 7, 2008.  AR 73-76, 87-91.

2           On July 13, 2009, a hearing was held before the administrative law judge (the "ALJ"),

3    Mark C. Ramsey.  AR 26-68.  Plaintiff was represented by a non-attorney at the hearing, at which

4    he testified.  In a decision dated September 4, 2009, the ALJ determined that plaintiff was not

5    disabled under sections 216(i) and 223(d) of the Act.  AR 11-17.

6           Plaintiff requested the Appeals Council review the ALJ's decision.  AR 7-9.  The Appeals

7    Council denied review on June 18, 2010, leaving the ALJ's decision as the final decision of the

8    Commissioner of Social Security.  AR 1-3.

9           On July 26, 2010, plaintiff filed suit in this court for review of the ALJ's decision.  Smith

10   v. Astrue, 2:10-cv-1979 GGH.  On January 26, 2011 and based upon the stipulation of the parties,

11   that case was remanded to the ALJ to evaluate the opinion of the examining physician, Allen

12   Hassan, M.D., and explain the weight given to it, to reconsider the disability rating determined by

13   the Department of Veterans' Affairs, and to obtain testimony from a vocational expert (VE) to

14   identify jobs available in the national economy that can be performed by plaintiff despite his

15   assessed limitations, and resolve any conflicts between the VE's testimony and information in the

16   Dictionary of Occupational Titles.  Id., ECF No. 15.

17          On September 21, 2011, plaintiff appeared before ALJ Ramsey for a second hearing.  AR

18   412-57.  At this hearing, plaintiff testified, as did a vocational expert and medical expert.

19   Following the hearing, on November 8, 2011, the ALJ again found that, although plaintiff's

20   impairments prevented him from performing his past work, he remained able to perform other

21   work that exists in significant numbers in the national economy.  AR 398-406.

22          On November 23, 2011, plaintiff re-filed a complaint in this court, and this matter is now

23   before the court to review the ALJ's November 8, 2011 decision following remand.  Pending are

24   the parties' cross-motions for summary judgment.  ECF Nos. 13, 14.

25                                    FACTUAL BACKGROUND

26          The parties are familiar with the medical evidence and other evidence of the record.

27   Therefore, the evidence will not be repeated here except as necessary to explain the decision.

28   ////

SEQUENTIAL DISABILITY EVALUATION

Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  This provision defines disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits under the program.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

THE ALJ'S NOVEMBER 8, 2011 OPINION

In his November 8, 2011 opinion, the ALJ determined at step one of the sequential disability evaluation that plaintiff had not engaged in substantial gainful activity since June 17, 2007, the alleged onset date.  AR 400.  At step two, the ALJ found plaintiff "has the following severe impairments: degenerative disk disease in the cervical and lumbar spines; chronic bilateral knee pain and a personality disorder."  AR 400.  At step three, the ALJ found plaintiff's

3

1   impairments, considered singly and in combination, did not meet or equal the requirements of a

2   listed impairment pursuant to 20 CFR Part 404, Subpart P, Appendix 1.  AR 400-01.

3         At step four, the ALJ found plaintiff was not able to perform past relevant work.  AR 404.

4   In reaching this conclusion, the ALJ considered the medical record, considered and rejected the

5   opinion of plaintiff's physician, Dr. Allen Hassan, and credited the opinion of a non-examining

6   medical expert.

7         Finally, the ALJ found plaintiff was not disabled because, considering plaintiff's age,

8   education, work experience, and residual functional capacity ("RFC"), he was capable of

9   performing the following:

10
11
12
13
> [L]ift and/or carry 50 pounds occasionally and 20 pounds frequently; stand and/or walk for 6 hours in an 8-hour day; sit for approximately 6 hours out of 8-hour work day; unlimited push and/or pull with upper and lower extremities; and cannot perform activities requiring climbing of ladders; ropes or scaffolds; mentally suffers from a personality disorder which precludes him from work which involves teamwork or interaction with the public.

14   AR 401.  In so finding, the ALJ found that plaintiff was capable of making a successful

15   adjustment to other work that exists in significant numbers in the national economy.

16   STANDARD OF REVIEW

17         The Commissioner's decision that a claimant is not disabled will be upheld if the findings

18   of fact are supported by substantial evidence in the record and the proper legal standards were

19   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

20   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

21   180 F.3d 1094, 1097 (9th Cir. 1999).

22         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

23   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

24   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

25   Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

26   conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

27   NLRB, 305 U.S. 197, 229 (1938)).

28         "The ALJ is responsible for determining credibility, resolving conflicts in medical

4

1   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

2   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

3   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

4   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

5                                                      DISCUSSION

6           In his moving papers, plaintiff argues that the ALJ erred in (1) failing to properly credit

7   the opinion of his treating psychiatrist, Dr. Russell Cottrell, (2) failing to properly credit

8   plaintiff's testimony, and (3) finding that plaintiff has the RFC to perform a limited range of

9   medium exertion work.  The Commissioner asserts that there was no error and that the opinion of

10  the ALJ should be affirmed.

11  A.      Opinions of Treating Psychiatrist and Treating Physician

12          Plaintiff argues first the ALJ erred by failing to properly credit the opinion of his

13  treating psychiatrist, Russell Cottrell, MD, and by rejecting the opinion of treating physician

14  Allen Hassan, MD, without consideration of Dr. Cottrell's opinion.  Pl.'s Mot. Summ. J., ECF

15  No. 13 at 22.

16          1.   Applicable Standards

17          The weight given to medical opinions depends in part on whether they are proffered by

18  treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

19  1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

20  greater opportunity to know and observe the patient as an individual.  AR; Smolen v. Chater, 80

21  F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical

22  opinion, in addition to considering its source, the court considers whether (1) contradictory

23  opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an

24  uncontradicted opinion of a treating or examining medical professional only for "clear and

25  convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or

26  examining professional may be rejected for "specific and legitimate" reasons that are supported

27  by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded

28  superior weight, if it is contradicted by a supported examining professional's opinion (e.g.,

1  supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews

2  v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751

3  (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings

4  as a treating physician, but differs only in his or her conclusions, the conclusions of the

5  examining physician are not 'substantial evidence.'"  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.

6  2007).

7         2.  Background

8             a.  Dr. Allen Hassan's Opinion

9        As noted, the ALJ considered and rejected the opinion of Dr. Allen Hassan, plaintiff's

10  treating physician.  Dr. Hassan's opinion was expressed in two letters written in support of

11  plaintiff's applications for disability benefits.

12        The first letter is dated November 25, 2006 and was sent to the Department of Veterans

13  Affairs.  AR 262-65.  In this letter, Dr. Hassan reviewed the medical record to address plaintiff's

14  allegations of a mental health disorder, as well as knee and back pain.  Dr. Hassan first addressed

15  plaintiff's mental health allegations, explaining that plaintiff's "dramatic personality change" and

16  neck and back pain were related to a 1992 "severe automobile crash" that sent plaintiff to an

17  emergency room.  Dr. Hassan referenced a document from the Mental Health Department, United

18  States Naval Hospital, dated July 28, 1992 diagnosing plaintiff with "mixed personality disorder"

19  and discharging him from the Navy.  Dr. Hassan then disputed the record to the extent it refuted a

20  personality disorder, including a July 15, 1992 mental status evaluation that found plaintiff to

21  suffer from "depression versus dysthymic disorder."  Dr. Hassan asserted that this finding was in

22  error based on plaintiff's mental health complaints, his history of being "knocked around as a

23  kid," and the fact that his pupils were found to be unequal after the automobile accident.  Next, in

24  reference to plaintiff's knee pain, Dr. Hassan referenced a number of medical records showing a

25  left knee injury, including medical notes dated January 1992 when plaintiff was diagnosed with a

26  left knee contusion; a July 1994 report noting a painful and swollen left knee; and a July 2005

27  evaluation stating "left knee pain with degenerative joint disease."  Finally, in support of

28  plaintiff's allegations of back pain, Dr. Hassan referenced a September 1990 medical report

1    diagnosing plaintiff with a lumbar strain with spasm and plaintiff's continuing complaints of low

2    back pain, especially with bending, lifting, twisting or turning.  In sum, Dr. Hassan stated that

3    plaintiff's knee pain amounted to a 30% disability rating, and plaintiff's mental health issues

4    amounted to a 70% disability rating.

5            On July 6, 2007, Dr. Hassan wrote a second letter in support of plaintiff's claim for

6    disability benefits, filed with the State of California.  AR 261.  There, Dr. Hassan indicated that

7    he had been treating plaintiff from April 6, 2006 through the date of the certificate "as needed."

8    Dr. Hassan noted that plaintiff's "primary" problem is a brain injury/atrophy, with severe mood

9    swings, irritability, and poor short-term memory.  Dr. Hassan determined that plaintiff needed a

10   full neuropsychiatric battery.  He then noted that plaintiff's secondary problems were

11   degeneration of cervical intervertebral disc and degeneration of lumbar or lumbosacral

12   intervertebral disc.

13                          b.   Dr. Russell Cottrell's Opinion

14           In considering and rejecting Dr. Hassan's opinion as to plaintiff's mental health

15   impairment, the ALJ referred to the medical record and credited the opinion of a non-examining

16   medical expert.  The ALJ did not, however, consider or discuss the opinion of plaintiff's treating

17   psychiatrist, Dr. Russell Cottrell.  Unlike Dr. Hassan, whom the ALJ claimed treated plaintiff

18   only on "a sporadic basis," see AR 402, Dr. Cottrell treated plaintiff approximately every two

19   months over the course of several years.[1]

20           On August 1, 2006, plaintiff was first seen by Dr. Cottrell on referral from Dr. Hassan.

21   AR 299-302.  Dr. Cottrell's impression of plaintiff following this examination was that plaintiff

22   was "[s]lightly irritable and depressed, affect constricted.  No perceptual abnormalities.

23   Thinking—linear; no suicidal or homicidal tendencies.  Orientation and memory grossly intact."

24   Dr. Cottrell declined to prescribe any treatment at that time pending a workup and course of

25   treatment following consultation with neurology and psychology.

26           On September 19, 2006, plaintiff underwent an MRI, which revealed that plaintiff's brain

27   _____

28   [1] The background set forth here is not intended to be a comprehensive review of the medical
     record.  Rather, it is presented to show the frequency with which Dr. Cottrell treated plaintiff.

1   is "normally formed," although there was a "very subtle expansion of the subarachnoid CSF

2   space at the frontal pole of the brain."  AR 271.  The reviewing doctor's impression was that

3   "[t]here may be very subtle frontal atrophy, although this is a borderline finding."

4          On March 6, 2007, plaintiff was seen for a neuropsychological examination to assess the

5   contribution of frontal lobe dysfunction to his problems with anger and impulse control.  AR 291-

6   95.  On review of plaintiff's medical history, the examining doctor's observations, and the tests

7   administered, the following summary and recommendations were made:

8              [Plaintiff]'s scores on a battery of neuropsychological tasks were all
               within or above normal limits.  General cognitive function and
9              estimates of premorbid function were in the average range. Tests of
               language were also in the average range.  Memory was an area of
10             strength.  Verbal memory was in the superior range both
               immediately and at a delay. Visual memory was high average
11             immediately due to some sloppiness in drawing, but improved to
               the superior range with a delay. Tests of frontal executive function
12             ranged from average to very superior. Despite strong scores in some
               frontal executive tasks, [plaintiff]'s performance did present
13             evidence of the type of errors associated with frontal dysfunction.
               On Mental Control, he performed better on the more difficult tasks,
14             failing to apply himself to easier items.  He had difficulty
               formulating the rules on WCST, but once he did so, he performed
15             quite well and without evidence of being unable to inhibit incorrect
               motor responses. . . .  It is possible that some of these problems are
16             related to his history of closed head injury. He did have difficulty in
               school as a teenager, so was not free from behavioral problems
17             prior to his military service. However, his problem on shipboard
               was the first that he attributed to being unable to get along with
18             those around him and that followed very closely on his MTA.  At
               present, he does not seem motivated to seek treatment for his
19             problems with impulsivity and anger.

20  AR 295-96.

21         On May 7, 2007, plaintiff was again seen by Dr. Cottrell for a mental health evaluation.

22  AR 288-90.  Dr. Cottrell noted that plaintiff was "[i]rritable when talking about stressors at work;

23  brighter at other times."  Plaintiff was prescribed gabapentin for anger and neuropathy.

24         On June 25, 2007, plaintiff was again seen by Dr. Cottrell for a mental health

25  examination.  AR 286-88.  Dr. Cottrell noted, inter alia, that plaintiff was "[s]lightly depressed,

26  affect constricted."  Dr. Cottrell's assessment mirrored his assessment following previous

27  examinations, and a follow-up appointment was scheduled.

28         On July 23, 2007, at the follow-up appointment, Dr. Cottrell made similar observations as

1   following the previous examinations.  AR 286-88.

2          On January 24, 2008, plaintiff was prescribed lamotrigine by Dr. Cottrell for his anger,

3   depression, and chronic pain.  AR 328.

4          On February 25, 2008, Dr. Cottrell examined plaintiff and, following discussion of

5   plaintiff's stressors, determined that "[t]he diagnosis of adjustment disorder is not adequate to

6   describe the patient's condition."  AR 325-26.  Plaintiff was advised to continue his treatment

7   plan, which included continued use of lamotrigine.

8          On April 1, 2008, plaintiff was again seen by Dr. Cottrell, who again advised plaintiff to

9   continue his treatment plan, including continued use of lamotrigine.  AR 333-34.

10         On January 15, 2009, Dr. Cottrell wrote a brief letter to an unidentified person regarding

11  plaintiff's mental health, which reads as follows: "[Plaintiff] has been unable to work since June

12  2007 because of irritability and poor stress tolerance.  These symptoms are residuals of a head

13  injury sustained in 1992 which resulted in mood and personality changes that have affected him

14  since.  MRI findings on 9/19/2006 were consistent with mild frontal lobe atrophy."  AR 370.

15         On October 8, 2009, Dr. Cottrell saw plaintiff for a medication management consult.  AR

16  363-66.  Plaintiff's prescription for lamotrigine remained active, and Dr. Cottrell's notes reflect

17  that plaintiff's wife noticed plaintiff to be "calmer, less irritable" on the medication.

18         On December 2, 2009, Dr. Cottrell saw plaintiff for another medication management

19  consult.  AR 361-62.  Dr. Cottrell's notes indicate plaintiff's continued use of lamotrigine for his

20  mood swings, although plaintiff stated that he was unsure if the medication was helping his mood.

21         On June 10, 2011, plaintiff was seen by Dr. Cottrell, who wrote in the progress notes that

22  plaintiff "has good and bad days."  AR 608-10.

23         On August 15, 2011, plaintiff was seen by Dr. Cottrell for medication management

24  meeting.  AR 606-08.  Dr. Cottrell noted that plaintiff continued to suffer from "outbursts of

25  anger," and that he had recently fought with his brother-in-law because plaintiff was "pissed . . .

26  off."

27         On August 16, 2011, Dr. Cottrell completed a Medical Assessment of Ability to do Work-

28  Related Activities (Mental).  AR 604-05.  Dr. Cottrell made the following notations regarding

1  plaintiff's ability to adjust to a job: fair ability to follow work rules and to function independently,

2  but no ability to tolerate co-workers, to deal with the public, to use judgment, to interact with

3  supervisor(s), to deal with work stresses, or to maintain attention/concentration.  Dr. Cottrell also

4  indicated that plaintiff had no ability to behave in an emotionally stable manner or to relate

5  predictably in social situations.  He wrote, "[P]atient is subject to mood swings, unpredictable

6  bouts of anger, hostility and violence toward others.  Has difficulty using conventional coping

7  strategies such as 'time-outs.'"

8              c.  The ALJ's Rejection of Dr. Hassan's Opinion

9        In finding that plaintiff does not have a severe mental health impairment, the ALJ

10  considered only the opinion of Dr. Hassan, which he rejected as follows:[2]

11
        On November 25, 2006, a Dr. Hassan sent a letter to the VA in
        regards to an application for disability filed by the claimant.  Doctor
12      Hassan stated that the claimant had been misdiagnosed when he
        was involved in the 1992 [motor vehicle accident] and that in fact
13      he had suffered frontal lobe dysfunction as a result of brain atrophy
        which causes anger and anxiety when he is around other people,
14      even family members.   There is no objective support for Dr.
        Hassan's opinions in the record.  MRIs of the claimant's head and
15      brain, where were performed on September 20, 2006 and November
        6, 2006, were interpreted as showing no significant abnormalities,
16      only a very subtle expansion of the subarachnoid CSF space at the
        frontal pole of the brain.  Additionally, neuropsychological testing
17      of the claimant on March 6, 2007 was interpreted as showing
        frontal executive function scores all within or above normal limits.
18      This testing was interpreted as showing frontal executive function
        scores all within normal or above normal limits.  Additionally, the
19      medical expert (ME) testified that the claimant does not suffer from
        frontal lobe damage but rather a personality disorder which causes
20      severe limitations in his ability to perform teamwork or to interact
        with the public.  The ME further testified that the claimant is unable
21      to perform work involving teamwork or interaction with the public
        but in fact has the ability to perform the mental demands of simple,
22      complex and/or detailed work which does not involve teamwork or
        interaction with the public.  The undersigned credits and adopts the
23      opinions of the medical expert.

24  AR 404 (citations omitted).

25      3.  Analysis

26        The undersigned finds that the ALJ erred when he failed to consider the opinion of

27  _____

    [2] Discussion of the ALJ's rejection of Dr. Hassan's opinion is limited here to plaintiff's mental
28  health impairment.

1   plaintiff's treating psychiatrist, Dr. Cottrell.  The ALJ's failure to consider Dr. Cottrell's opinion

2   was not for lack of awareness.  Indeed, at the September 21, 2011 hearing, plaintiff specifically

3   identified Dr. Cottrell as his treating psychiatrist.  See AR 437.  Yet in the ALJ's November 8,

4   2011 decision rejecting plaintiff's application for disability insurance benefits, Dr. Cottrell's

5   opinion was not considered.  Rather, the ALJ focused on and rejected the opinion of Dr. Hassan,

6   plaintiff's treating physician, without any discussion of Dr. Cottrell's opinion.

7          When an ALJ fails to accord a treating professional's opinion the required deference, this

8   may constitute a sufficient ground for reversal or remand, unless such error was harmless in that

9   the ALJ's opinion is nonetheless supported by substantial evidence.  See Patrick v. Barnhart,

10  2004 WL 1618815, *8 (W.D. Tex. 2004) (failure to discuss agency physician's opinion was error

11  but was not prejudicial because opinion supported ALJ's decision and was consistent with

12  claimant's testimony and substantial evidence of record).  Here, the court cannot say that the

13  ALJ's failure to discuss, let alone credit, Dr. Cottrell's opinion was harmless.  Dr. Cottrell's

14  medical notes consistently reflect his opinion that plaintiff suffers from frontal lobe atrophy, that

15  he regularly experiences anger and mood swings, that medication is necessary to control these

16  negative impulses, and that these impairments render plaintiff unable to function in the

17  workplace.  In light of the ALJ's failure to discuss the psychiatrist's findings, the court is left to

18  wonder what basis the ALJ had for rejecting Dr. Cottrell's opinion.

19         The Commissioner  urges the court to infer from the ALJ's opinions in this case that the

20  ALJ would have rejected Dr. Cottrell's evaluation of plaintiff, which reached a conclusion very

21  similar to that of Dr. Hassan.  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)

22  (permitting court to draw specific and legitimate inferences regarding bases for ALJ's decision

23  from ALJ's opinion).  Such an inference is inappropriate here, however, because the Hassan

24  opinion rejected by the ALJ was expressed in  two letters written by the doctor, the first in 2006

25  and the second in 2007.  Dr. Cottrell's opinion, on the other hand, was issued following four years

26  of regularly treating plaintiff, beginning in 2007 and continuing through the time of the

27  September 21, 2011 hearing before the ALJ.  Based on those four years of examination and

28  treatment, Dr. Cottrell determined that plaintiff "is subject to mood swings, unpredictable bouts

1  of anger, hostility and violence toward others," and that he suffers from frontal lobe atrophy.  The

2  ALJ's failure to provide specific and legitimate reasons for rejecting this opinion was in error.

3  For these reasons, the decision is reversed.

4  B.      Plaintiff's Remaining Grounds for Relief

5          The court need not and has not adjudicated plaintiff's other challenges to the ALJ's

6  decision, except insofar as to determine that a reversal and remand for immediate payment of

7  benefits would not be appropriate.

8          Accordingly, IT IS HEREBY ORDERED that:

9              1.  Plaintiff's motion for summary judgment, ECF No. 13, is granted in part;

10             2.  The Commissioner's cross-motion for summary judgment, ECF No. 14, is

11  denied;

12             3.  The Clerk is directed to enter judgment in plaintiff's favor; and

13             4.  The matter is remanded for further proceedings consistent with this opinion.

14  DATED: June 13, 2013

15                                           _____

16                                           UNITED STATES MAGISTRATE JUDGE

17

18
    /mb;smit3128.ss.fn
19

20

21

22

23

24

25

26

27

28

                                        12